CLERK'S OFFICE U.S. DISTRICT COURT
AT ROANOKE VA. - FILED

AUG 2 1 2009

JOHN F. CORCORAN, CLERK
BY: _____ DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ABINGDON DIVISION

| | | |
|---|---|---|
| LISA MARIE CASEY, | ) | Criminal No. 1:06CR00071-1 |
| **Petitioner,** | ) | |
| | ) | **2255 MEMORANDUM OPINION** |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | By: Hon. James C. Turk |
| **Respondent.** | ) | Senior United States District Judge |

Petitioner Lisa Marie Casey, a federal inmate proceeding pro se, brings this action as a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. Casey alleges that her counsel was ineffective in a number of respects and that her imposed sentence was unlawful. The United States filed a motion to dismiss, Casey a response, and the court conducted an evidentiary hearing. With the court's permission, both parties filed supplemental briefs after the hearing, and the matter is now ripe for disposition. As materials outside of the pleadings were submitted for consideration, the court will treat the United States' motion as one for summary judgment. Upon review of the parties' submissions, the record, and the applicable law, the court finds that the United States' motion for summary judgment must be granted and Johnson's motion for § 2255 relief denied.

## I. Background and Procedural History

On November 13, 2006, Casey was charged in the Western District of Virginia with a 15-count Indictment. On April 10, 2007, she was also charged in a single count Information. That same day, and pursuant to a written plea agreement, Casey pled guilty to Count Fourteen of the Indictment—which charged her with attempted bank fraud, in violation of 18 U.S.C. § 1344, and to Count One of the Information—which charged her with wire fraud in violation of 18 U.S.C.

1

§§ 2, 1343.[1]  At the guilty plea hearing, the Honorable Pamela Meade Sargent, United States Magistrate Judge for the Western District of Virginia, conducted a thorough examination of Casey during the Rule 11 colloquy.  Upon finding Casey to be competent and capable of making an informed plea, and that her guilty plea was knowing and voluntary, the court accepted it.

On July 11, 2007, Casey was sentenced by the Honorable Glen M. Williams, United States District Judge for the Western District of Virginia. Before sentencing, the government moved for an upward departure on the ground that Casey's "criminal history category substantially under-represents the seriousness of her criminal history and the likelihood that she will commit other crimes." (Dkt. No. 46.) At the sentencing hearing, the government argued for an upward departure within the guidelines to a range of 33 to 41 months,  specifically requesting a 41-month sentence.  (Sent. Tr. at 40, Dkt. No. 91.)   The court granted the government's motion for an upward departure, but went beyond the government's request, sentencing Casey to 96-months incarceration for each of Count One of the Information and Count Fourteen of the Indictment, all terms to run concurrently.[2] After describing Casey as "an excellent con artist of a high degree," the court explained why it granted a variance:

> Your record begins in your late teens, and you're in your thirties
> now, and you have continued to injure the public.  And there just
> comes a time when there has to be a halt to it.  You've been tried
> on probation, and you haven't complied with probation, and you
> get loose from one thing, and then you're into another.

---

[1] In exchange for Casey's guilty plea, the remaining Counts of the Indictment were dismissed at sentencing.

[2] The Presentence Investigation Report ("PSR") found that Casey's total offense level was 11 with a criminal history category of V, yielding a guideline sentencing range of 24 to 30 months. The PSR also found that there may be grounds for an upward departure.  The court declined to add the PSR's recommended two offense levels for obstruction of justice, reducing Casey's total offense level to 9.  (Sent. Tr. at 47.)  Together with a criminal history category of V, Casey's guideline imprisonment range was 18 to 24 months.

> Based on that, and protection of the public, I'm varying from . . .
> the sentencing guidelines in this case and imposing sentence.

(Id. at 55.) Judgment was entered on July 16, 2007 and amended on July 24, 2007 because of a clerical error.

On July 18, 2007, Casey, by counsel, timely filed notice and certificate of appeal to the United States Court of Appeals for the Fourth Circuit.[3] (Dkt. No. 53.) Casey claims that the next day, the government "sent a letter to defense counsel indicating, 'If the appeal is not withdrawn promptly, the United States may pursue any of the remedies set out in Section 18 of the [plea] agreement." (Mem. in Sup. of § 2255 Mot. at 4, Dkt. No. 67.) Thereafter, defense counsel filed a motion to voluntarily dismiss the appeal. (Mot. for Summ. J. at 2-3, Dkt. No. 73.) Casey alleges that on July 30, 2007, defense counsel's paralegal sent her a letter "indicating [that] she needed to endorse the Motion to withdraw her appeal." (Mem. in Sup. of § 2255 Mot. at 4). On August 17, 2007, the Fourth Circuit directed that counsel provide Casey's written consent to the dismissal by September 7, 2007. (Mot. for Summ. J. at 3.) Casey then gave this written consent, and the Fourth Circuit granted her motion for dismissal on August 20, 2007, pursuant to Federal Rule of Appellate Procedure 42(b). (Dkt. Nos. 62, 63.)[4]

---

[3] On July 23, 2007, the Fourth Circuit appointed the same attorney who had represented Casey through her sentencing as her appellate counsel, effective July 18, 2007. (Dkt. No. 58.)

[4] The government notes that "[n]either the United States nor defense counsel can locate a copy of the signed Motion to Dismiss Appeal in their files. However, pursuant to Federal Rule of Appellate Procedure 42(b), the Court would not have dismissed the appeal without Casey's personal written consent." (Mot. for Summ. J. at 3, n.1.) Textually, Rule 42(b) does not require the defendant's personal written consent to dismiss a docketed appeal. Rather, the Rule provides that "[t]he circuit clerk may dismiss a docketed appeal if the parties file a signed dismissal agreement." Fed. R. App. P. 42(b) (emphasis added). However, Casey does not deny that she endorsed the motion to dismiss, but rather disputes the voluntariness of the endorsement. (See Opp. Br. at 1, Dkt. No. 75 ("[T]he prosecutor has failed to present evidence that Casey voluntarily agreed to the dismissal of her appeal, including any statement from defense counsel.").)

3

On May 19, 2008, Casey submitted her § 2255 Motion, which the court liberally construes under Haines v. Kerner, 404 U.S. 519, 520-21 (1972).[5] First, Casey argues that her counsel rendered ineffective assistance during the all stages of her case until her appeal was withdrawn. Casey contends that her counsel was ineffective for failing to argue that Count 14 fails as a matter of law, and that this omission may have rendered her plea agreement invalid. (Mem. in Sup. of § 2255 Mot. at 14-16.) At sentencing, Casey argues that her attorney was ineffective for: (1) "go[ing] along with" Judge Williams substantial upward departure; (2) failing to adequately challenge her criminal history calculation; (3) not objecting to the PSR's failure to give Casey a two-level decrease for acceptance of responsibility; and (4) not arguing for a downward departure based upon Casey's reduced mental capacity at the time of her offenses. (Id. at 8-12.) After her appeal was filed, Casey claims that her defense counsel was ineffective for refusing to pursue it. (Id. at 8, 17-19.) Second, Casey contends that the sentence imposed was unlawful and in violation of United States v. Booker, 543 U.S. 220 (2005); 18 U.S.C. § 3553(a); and as the sentencing guidelines. (Id. at 19-30.)

The United States filed a motion for summary judgment arguing that all of Casey's claims are validly waived pursuant to her plea agreement, and in the alternative that Casey's claims fail on the merits. Casey then filed a response, stressing that her plea agreement waivers are invalid because she did not have effective assistance of counsel, and/or because she was incompetent at the time of her guilty plea. (Opp. Br. at 2-4, Dkt. No. 75.)

On February 12, 2009, the court took the United States' motion under advisement, pending an evidentiary hearing focused upon discussions between Casey and her counsel after Casey's notice of direct appeal was filed. (Dkt. Nos. 79-80.) The evidentiary hearing was held

---

[5] On that same day, the undersigned was added to the case as the presiding judge.

Case 1:06-cr-00071-JPJ   Document 93   Filed 08/21/09   Page 4 of 22   Pageid#: 567

on May 18, 2009, at which Casey testified along with her previous counsel.[6] Both parties then submitted additional argument regarding the issues raised at the hearing.

## II. Standards of Review

### A. Motion for Summary Judgment

The court must treat the United States' motion as one for summary judgment, as both parties submitted materials outside of the pleadings. Fed. R. Civ. Pro. 12(d).[7] In a motion for summary judgment, the court views the facts, and inferences to be drawn from those facts, in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986). Summary judgment is only proper where "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

### (2) Section 2255

After conviction and exhaustion, or waiver, of any right to appeal, courts and the public can presume that a defendant stands fairly and finally convicted. See United States v. Frady, 456 U.S. 152, 164 (1982). However, prisoners in federal custody may attack the validity of their convictions pursuant to 28 U.S.C. § 2255. Under § 2255, a prisoner in federal custody may attack his sentence on four grounds: (1) the sentence was imposed in violation of the Constitution or the laws of the United States; (2) the court was without jurisdiction to impose the

---

[6] When it ordered an evidentiary hearing, the court also appointed Casey new counsel for this § 2255 action.

[7] The parties received reasonable and explicit notice of the court's intention to convert the United States' motion to dismiss into one for summary judgment. The Clerk of the Court issued a Roseboro Notice on July 22, 2008, explaining that "if documents or affidavits outside the pleadings are submitted by either party, any motion(s) to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure may be considered as motion(s) for summary judgment under Rule 56 of the Federal Rules of Civil Procedure." (Dkt. No. 74.)

sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence

is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). To prevail on a § 2255 motion, a

petitioner bears the burden of proof by a preponderance of the evidence. Miller v. United States,

261 F.2d 546, 547 (4th Cir. 1958).

### III. Analysis

### A. Plea Agreement Waiver

The court finds that, through her plea agreement, Casey validly waived her right to

collaterally attack her judgment. Because of the waiver, Casey's claims for § 2255 relief are

barred (with the exception of Casey's claim for ineffective assistance of counsel after her direct

appeal was noted, discussed infra Part III(B)).

It is well-settled that "a criminal defendant may waive [her] right to attack [her]

conviction and sentence collaterally, so long as the waiver is knowing and voluntary." United

States v. Lemaster, 403 F.3d 216, 220 (4th Cir. 2005). "[I]n the absence of extraordinary

circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively

established, and a district court should, without holding an evidentiary hearing, dismiss any §

2255 motion that necessarily relies on allegations that contradict the sworn statements."

Lemaster, 403 F.3d at 221-22.[8]

Casey executed her plea agreement on April 5, 2007. (Plea Agreement, Dkt. No. 40.)

She signed the plea agreement and also initialed every page. (Id.) By her plea agreement, Casey

explicitly waived her right to bring this § 2255 action:

---

[8] Though the court held an evidentiary hearing in this case, it was directed towards events after
Casey's direct appeal was noted. The court finds it unnecessary to hold a hearing specifically
focused on Casey's guilty plea and collateral attack waiver because there are no "extraordinary
circumstances" that call into question the truth of Casey's sworn statements at her guilty plea
hearing (see Lemaster, 403 F.3d at 221-22), and because the case record otherwise conclusively
shows that Casey is not entitled to relief (see 28 U.S.C. § 2255(b)).

> I agree not to collaterally attack the judgment and/or sentence imposed in this case and waive my right to collaterally attack, pursuant to Title 28, United States Code, Section 2255, the judgment and any part of the sentence imposed upon me by the Court. <u>I agree and understand that if I file any court document seeking to disturb, in any way, the judgment and/or sentence imposed in my case, the United States will be free to take whatever actions it wishes based on this failure to comply with my obligations under the plea agreement.</u>

(Plea Agreement, ¶ 10 (emphasis in original).) At her guilty plea hearing, Casey confirmed that she understood the terms of her plea agreement, including the waiver of her right to file a § 2255 action. (Guilty Plea Tr. at 17-18.) Judge Sargent then specifically questioned Casey regarding the waiver:

> THE COURT: Do you specifically understand that under the terms of this Plea Agreement that you are waiving or giving up your right to appeal or to collaterally attack your sentence in this matter? Do you understand that?
>
> THE DEFENDANT: Yes, your Honor.

(<u>Id</u>. at 18.)

In light of the plea agreement's § 2255 waiver and her sworn testimony that she understood this waiver, Casey makes two arguments for why the court should still set it aside (along with her entire guilty plea). First, Casey contends that her attorney rendered constitutionally ineffective assistance for failing to argue that the conduct underlying Count 14 (attempted bank fraud in violation of 18 U.S.C. § 1344) does not in fact constitute a crime. Second, Casey claims that she was not competent at the time of her guilty plea, and thus it was not knowing and voluntary. For the reasons that follow, the court finds these arguments unavailing.

7

## (1) Ineffective Assistance During Plea Proceedings

Plea agreement waivers "may not be knowing and voluntary if tainted by the advice of constitutionally ineffective trial counsel. . . . because [a] decision to enter into a plea agreement cannot be knowing and voluntary when the plea agreement itself is the result of advice outside 'the range of competence demanded of attorneys in criminal cases. United States v. Johnson, 410 F.3d 137, 151 (4th Cir. 2005) (internal citations omitted). In general, Strickland v. Washington, 466 U.S. 668 (1984) provides the framework for assessing a claim for ineffective assistance of counsel. Under Strickland, a defendant must show (1) that counsel's representation "fell below an objective standard of reasonableness" (id. at 688), and (2) that counsel's "deficient performance prejudiced the defense" (id. at 687). To demonstrate prejudice in connection with a guilty plea, a "defendant 'must show that there is a reasonable probability that, but for counsel's errors, [s]he would not have pleaded guilty and would have insisted on going to trial.'" Hooper v. Garraghty, 845 F.2d 471, 475 (4th Cir. 1988) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)).

In this case, Casey's plea agreement stated that she had no complaints about the adequacy of her counsel's performance to date, and that she voluntarily desired to plead guilty and to forgo her right to a jury trial. (Plea Agreement, ¶¶ 1, 19, 20.) At her guilty plea hearing, Casey affirmed that she was fully satisfied with her attorney's representation thus far in the case (Guilty Plea Tr. at 14), and later reiterated this point:

> THE COURT: Do you also understand that [your counsel] is correct, that if you have any complaints about his representation or you believe he has not adequately represented you, today is the day to raise those with the Court? Do you understand that?
>
> THE DEFENDANT: Yes, your Honor.

8

> THE COURT: And do you have any complaints that you wish to raise to the Court or any concerns you wish to bring to the Court's attention?
>
> THE DEFENDANT: No, your Honor.

(Id. at 28-29.)

Casey now argues that "there is some question among the circuits whether the conduct in which Casey engaged in Count 14 of the Indictment is even a federal crime,"[9] and that her counsel's "lack of advocacy on this point may constitute grounds to void the plea." (Mem. in Sup. of § 2255 Mot. at 14-16.) In support, Casey relies on United States v. Staples, 435 F.3d 860 (8th Cir. 2006), where the Eighth Circuit commented that "[s]everal circuits have held that the bank fraud statute does not extend to situations where the defendant has no intent to expose the bank to an actual or potential loss." Id. at 866 (citing numerous cases). As examples of conduct that had been found insufficient to establish bank fraud, the Staples court listed "a 'scheme to pass bad checks' and a 'pigeon drop' scheme, in which a victim is induced to withdraw money

---

[9] Count 14 charged that Casey "knowingly attempted to execute a scheme and artifice to obtain moneys and funds owned by and under the custody and control of a financial institution . . . by means of false and fraudulent pretenses and representations, in that she attempted to cash and deposit [a] forged and stolen check[]" on August 11, 2006 in the amount of $1,000, all in violation of 18 U.S.C. § 1344. (Indictment at 2, Dkt No. 4.) In turn, 18 U.S.C. § 1344 provides that:

> Whoever knowingly executes, or attempts to execute, a scheme or artifice--
>
> > (1) to defraud a financial institution; or
> >
> > (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises;
>
> shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

9

from a bank and entrust it to the defendant." Id. at 867 (citing United States v. Laljie, 184 F.3d 180, 190 (2d. Cir. 1999)).

Casey's argument is without merit. Unlike the examples cited from Staples, Casey directly and personally attempted to cash a stolen and forged check, as shown by the government's proffer of the evidence supporting Count 14 of the Indictment:

> Your Honor, the Government would show that in early June of 2006 an individual by the name of Mary Duncan had her purse stolen out of her car at a gas station in Bristol, Virginia. On August 11th of 2006, Ms. Casey entered the Blue Ridge Bank in Bristol, Virginia with a check from Mary Duncan's account, which was made out to Lisa Casey. At this time Lisa Casey was using the name Lisa Graniger. The check was written out for $1,000 and appears to have been written by Ms. Casey herself. She asked to have the cash checked [sic] and was advised that the check was from a Wachovia Bank and that she would need to take it Wachovia to have it cashed. Instead she handed a passbook for a savings account to the clerk. This was a savings account that had been set up for Ms. Casey while she was at the halfway house in Lebanon. And she asked if she could have the check deposited.
>
> The bank contacted Ms. Duncan as they were aware that the account was actually closed. Ms. Duncan advised that those checks had been stolen out of her purse in June and that she had closed the account as a result.

(Guilty Plea Tr. at 30.) Casey had the opportunity to contest the government's proffered facts, and while she did dispute some other assertions, Casey accepted the government's evidence underlying Count 14. (Id. at 33-34.)

Finally, irrespective of the out-of-circuit case law that Casey cited in her brief on this point, in the Fourth Circuit, Casey's conduct unquestionably violated the bank fraud statute as it subjected a bank to an actual or potential loss. In United States v. Brandon, 298 F.3d 307 (4th Cir. 2002), the Fourth Circuit denied defendant Brandon's motion to dismiss a bank fraud indictment, when "[t]he indictment allege[d] that Brandon stole checks from legitimate accounts,

10

forged the account holder's signature on the checks, and then presented the forged instruments to merchants who exchanged goods for the funds held by the drawee banks." Id. at 312. Even though Brandon's culpability was not as clear under the bank fraud statute as Casey's because Brandon did not "present[] the forged checks directly to the banks," the Fourth Circuit held that Brandon had "exposed the drawee banks to potential loss in that she stole checks from existing bank accounts, forged the account holder's signature, and then injected the forged instruments into the stream of commerce." Id. at 313 (emphasis added).

Therefore, Casey's contention that her conduct underlying Count 14 may not have violated the bank fraud statute is without merit. Accordingly, her attorney's failure to argue this point prior to her guilty plea cannot constitute deficient performance, and Casey has set forth no other colorable claim of her counsel's deficient performance through the guilty plea stage of these proceedings.[10] Thus, Casey cannot make out an ineffective assistance of counsel claim during the plea process that would render her plea agreement and § 2255 waiver invalid.[11]

### (2) Competency During the Plea Proceedings

In addition to her ineffective assistance of counsel claim, Casey also argues that her plea was not knowing and voluntary because she was not competent at the time she entered into it. (Opp. Br. at 3.) Casey states that her competency was at issue during the guilty plea hearing, and claims that her attorney lied at the hearing when he said that he had discussed the prospect of another competency exam with her. (Id.) Casey contends that there can be no certainty that her

---

[10] In fact, Casey would have had to come forward with "clear and convincing" evidence of her counsel's deficient performance, in order rebut "the representations [s]he made during the plea colloquy" that she was satisfied with her counsel's performance to date. See Burket v. Angelone, 208 F.3d 172, 191 (4th Cir. 2000).

[11] The court declines to address Strickland's prejudice prong, as failure to satisfy either prong is fatal to a petitioner's claim. Strickland, 466 U.S. at 697 ("[T]here is no reason for a court . . . to address both components of the inquiry if the defendant makes an insufficient showing on one.").

plea was knowing and voluntary because she was not taking medication for her mental illnesses at the time. (Id.) For the reasons that follow, the court finds that Casey was competent at the guilty plea hearing,[12] and that her plea and its waivers were thus made knowingly and voluntarily.

Casey is correct that her competence was an issue at the guilty plea hearing. She has a history of substance abuse, as well as mental illnesses, and therefore Judge Sargent questioned Casey at length about these subjects:

> THE COURT: Have you ever been treated for any type of mental illness or substance abuse?
>
> THE DEFENDANT: Yes, your Honor.
>
> THE COURT: Okay. Can you explain to me which? Have you been treated for any type of mental illness?
>
> THE DEFENDANT: Yes, your Honor.
>
> THE COURT: Okay. What have you been diagnosed with?
>
> THE DEFENDANT: Bipolar disorder with psychotic features; post traumatic distress disorder; disassociative disorder; borderline personality disorder; ADHD; severe depression. I believe that –
>
> THE COURT: All right. Okay. When were you diagnosed with these conditions? Do you recall when you were first diagnosed?
>
> THE DEFENDANT: Since the age of eleven.
>
> THE COURT: Age of eleven. Have you been in treatment for these conditions since that time?
>
> THE DEFENDANT: On and off, yes, your Honor.

---

[12] The test for determining competency is whether a defendant "has sufficient present ability to consult with [her] lawyer with a reasonable degree of rational understanding—and whether [s]he has a rational as well as a factual understanding of the proceedings against [her]." Dusky v. United States, 362 U.S. 402, 402 (1960) (per curiam).

THE COURT: All right. When's the last time that you were in any treatment for these conditions?

THE DEFENDANT: I was receiving treatment while I was incarcerated at FCI Tallahassee. I was seeing a therapist and on my medications, and when I was at the halfway house I was receiving my medications and I seen a state care worker, I guess, that the community corrections referred me to one time.

THE COURT: Okay. Have you received any treatment since your last period of incarceration?

THE DEFENDANT: When I first got out I had one appointment with my doctor, Dr. Ralph Ramsey here in Abingdon. I had one appointment with him and then nothing since.

THE COURT: Okay. Why did you not continue in the treatment? Is it because you didn't believe you felt like you needed continued treatment or was there some other reason?

THE DEFENDANT: No, I needed the treatment. When I got released from the halfway house I forgot my medication and I went off my medication. And I don't think properly when I don't -- when I'm not on medication and because we didn't have transportation at that specific time to continue from going from Bristol to Abingdon for my weekly appointments.

THE COURT: All right. Let me ask this. Are you taking any medication for those conditions currently?

THE DEFENDANT: No.

THE COURT: All right. When's the last time that you took any medication for those conditions?

THE DEFENDANT: While I was in the halfway house.

THE COURT: All right. Do you believe any of those conditions today affect your ability to understand the nature of these proceedings?

THE DEFENDANT: No, I understand them.

THE COURT: Do these conditions in any way affect your ability to understand the charges against you?

13

THE DEFENDANT: I understand the charges.

THE COURT: Do you believe they in any way affect your ability to assist [your counsel] in representing you in these matters?

THE DEFENDANT: No.

THE COURT: Okay. Have you taken in the past 24 hours any drugs, medicines, pills or alcoholic beverages?

THE DEFENDANT: Prenatal vitamin.

THE COURT: Okay. Other than that any other medications?

THE DEFENDANT: No, ma'am.

THE COURT: Can you tell me the present state of your health? Do you have any health problems currently other than those emotional or psychological problems you advised me of earlier?

THE DEFENDANT: I'm pregnant.

THE COURT: Okay. Other than that any other medical conditions?

THE DEFENDANT: No, your Honor.

(Guilty Plea Tr. at 7-10.) Casey's attorney also engaged in an extensive dialogue with the court about Casey's history of mental illness and present ability to enter a knowing and voluntary plea. (Id. at 10-12.) Counsel told the court that Casey had been helpful to the defense, and that it was his belief that she understood the proceedings against her. (Id.) Counsel stated that he had considered asking the court to order a competency evaluation, but Casey was not interested in another evaluation. (Id. at 11.)[13] Casey repeatedly told the court she understood the rights that

---

[13] Judge Sargent then noted that:

> the Court previously had ordered competency evaluations for Ms. Casey, and I believe each of those evaluations had found her competent at that time, even though several of them had reflected that she did have a history of some psychiatric illness and conditions, emotional problems, psychological problems and those

14

she was forgoing by her plea agreement and was voluntarily pleading guilty with knowledge of all the consequences of her plea. (Id. at 2-6, 13-14, 18-25, 27-29.) At the conclusion of the hearing, the court accepted Casey's guilty plea, finding that was "fully competent and capable of entering an informed plea," made her plea knowingly and voluntarily," and that Casey was "aware of the nature of the charges and the consequences of the plea." (Id. at 35.)

The court has reviewed the record and finds that Judge Sargent's acceptance of Casey's guilty plea was correct—Casey was competent, and knowingly and voluntarily entered into her plea agreement. In making this determination, the court discredits Casey's assertion that her attorney lied to the court about whether he had discussed with Casey the possibility of undergoing another competency evaluation. Casey did not object or comment on counsel's representation to the court, nor did she raise the issue when the court later specifically asked Casey if she had "any complaints [about counsel's representation] that [she] wish[ed] to raise to the Court or any concerns you wish to bring to the Court's attention." (Id. at 28-29.) Also, the fact that Casey was not taking her medication does not mean that she could not be competent to enter a plea. Judge Sargent extensively examined Casey before determining that she was competent. Further, Casey's own testimony that she understood the charges against her, as well as her lucid and complete account of her criminal conduct (id. at 29-30, 33-34) belie her current claim that she was not competent to enter into a guilty plea.

reports reflected that. None of those reports I think in the past had found her in any way incompetent to proceed in criminal matters.

(Guilty Plea Tr. at 11-12.)

### (3) Impact of Collateral Attack Waiver

As the court finds that Casey validly waived her right to bring this § 2255 action, this bars her claims of counsel's ineffectiveness through sentencing,[14] and that her sentence was unlawful.[15]

### B. Ineffective Assistance After Noting Appeal

In addition to Casey's collateral attack waiver, by the same reasoning the court also finds that she validly waived her right to pursue a direct appeal. (Plea Agreement, ¶ 9; see supra Part

---

[14] The Fourth Circuit has distinguished a "narrow class of claims" that fall outside of the scope of an enforceable waiver of direct appeal rights, and indicated that these exceptions also apply to any waiver of one's collateral attack rights. Lemaster, 403 F.3d 216, 220 n.2. Among these exceptions is "a claim that [petitioner] had been wholly deprived of counsel during his sentencing proceedings." Id. (discussing United States v. Attar, 38 F.3d 727, 732 (4th Cir. 1994)) (emphasis added). Such an exception requires more than general ineffective assistance of counsel. See United States v. Litten, No. 5:06-cr-00015, 2008 U.S. Dist. LEXIS 51630, at *13 (W.D. Va. Jul. 7, 2008) ("A claim that counsel was generally ineffective does not suggest that the defendant was wholly deprived of counsel and, thus, such claims do not fall outside the scope of the collateral attack waiver."). Thus, Casey's claims that her counsel was ineffective at sentencing are barred because she makes no claim that she was wholly deprived of counsel and the record conclusively shows that she could not make out such a claim. (See generally Sent. Tr.)

[15] Another exception to an enforceable collateral attack waiver (see supra n.14) is a claim that one's sentence "is in excess of the maximum penalty provided by statute." Lemaster, 403 F.3d 216, 220 n.2. Casey does not explicitly claim that her 96-month sentence was in excess of the statutory maximum, and any such a claim would clearly fail. See 18 U.S.C. § 1344 (maximum term of imprisonment of 30 years); 18 U.S.C. § 1343 (maximum term of imprisonment of 20 years). To the extent that Casey argues any other infirmities in the calculation of her sentence, those § 2255 claims are waived by her plea agreement. In addition, the court notes that Casey was advised of her statutory maximums in both her plea agreement and at her guilty plea hearing, and was repeatedly informed that the sentencing guidelines were now advisory and thus the court had discretion to impose a sentence up to the statutory maximum. (See Plea Agreement, ¶ 1; Guilty Plea Tr. at 15-17, 19, 23, 27-28.)

16

III(A).) Nevertheless, Casey had the right to file a direct appeal (see United States v. Poindexter, 492 F.3d 263 (4th Cir. 2007)),[16] which her counsel noted on July 18, 2007.

As discussed supra, Casey's appeal was then dismissed just over a month later. Even when a valid appeal waiver exists, an attorney's duties to a client extend beyond merely noting an appeal when constitutionally required. Poindexter, 492 F.3d at 271 ("If a notice of appeal is ultimately filed, an attorney has yet other duties owing to his client.").[17] For her part, Casey asserts that while "defense counsel filed a timely notice of appeal as she requested . . . he refused to pursue the appeal once [the United States] objected to the appeal." (Mem. in Sup. of § 2255 Mot. at 17.) Casey contends that her counsel "demanded that [she] sign a Motion to Withdraw

_____

[16] Poindexter came before the Fourth Circuit on petitioner's § 2255 motion. While it is clear that Poindexter waived his right to file a direct appeal, the decision does not state whether he also waived his § 2255 rights, and hints that he did not. See Poindexter, 492 F.3d at 270 ("In the typical appeal waiver case, the government and the defendant enter into a plea agreement, wherein the defendant agrees to plead guilty and waive some or all of his appellate rights (including sometimes the right to pursue § 2255 relief) in exchange for the government's agreement to dismiss some of the charges pending against the defendant or to seek a lower sentence than the defendant could have faced had a judge or jury convicted him after a trial."). In any event, the court believes that it is just and proper for it to hear this claim even in light of Casey's enforceable collateral attack waiver. If the court did not so construe Poindexter, then there would effectively be no mechanism to enforce the basic principle that Poindexter stands for—that a defendant has a right to a direct appeal proceeding even in the face of a valid waiver. For the court to hear Casey's claim also makes sense in light of the fact that if her direct appeal rights were violated, then the remedy would be for the court to vacate her old judgment to permit Casey a new opportunity to seek direct appeal and dismiss without prejudice her remaining § 2255 claims. See United States v. Killian, 22 Fed. App'x. 300, 301 (4th Cir. 2001).

[17] In the Fourth Circuit:

> [t]hese duties include examining the trial record and identifying and weighing potential issues for appeal. If the appropriate review reveals a meritorious issue for appeal, the attorney is ethically required to prepare a brief on the merits and argue the appeal. If the appropriate review reveals only frivolous issues, the attorney can file a brief in accordance with Anders v. California, 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967).

Poindexter, 492 F.3d at 271.

Appeal." (Id.) Because the record was unclear with respect to what transpired after Casey's appeal was noted, the court held an evidentiary hearing to determine whether counsel may have rendered ineffective assistance during this time period.[18]

Before delving into the merits of this claim, the court must first determine what standard to apply in evaluating whether Casey's counsel may have rendered ineffective assistance. This case stands in a somewhat unusual posture: an appeal was noted, but then withdrawn, and Casey contends that counsel was ineffective during this interim period. Having found no authority discussing this unique situation, the court must consider whether it should apply the general Strickland two-prong standard that is used when evaluating an attorney's representation on appeal (see, e.g., Bell v. Jarvis, 236 F.3d 149, 165 (4th Cir. 2000)), or borrow from the special standards courts utilize when an appeal was not in fact noted.

When an appeal was not noted, the legal framework for evaluating ineffective assistance claims is as follows: if an attorney fails to file a requested appeal, the attorney is per se ineffective and the defendant is entitled to the appellate proceeding. United States v. Witherspoon, 231 F.3d 923, 926-27 (4th Cir. 2000) (citing Roe v. Flores-Ortega, 528 U.S. 470 (2000)). If a defendant did not request that an appeal be filed, then counsel's performance is measured by first asking whether he "consulted with the defendant about an appeal." Flores-Ortega, 528 U.S. at 478. By "consult," the Supreme Court specifically means "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." Id. If counsel did consult, then his performance is only deficient if he failed to follow the defendant's express instructions regarding an appeal.

---

[18] To the extent that Casey argues that the decision to withdraw her notice of appeal was a product of something other than ineffective assistance of counsel (i.e. that it was made under duress) the court finds that these arguments are without merit.

(Id.) If the attorney did not consult, then the court must ask "whether counsel's failure to consult with the defendant itself constitutes deficient performance." (Id.) Counsel is constitutionally obligated to consult with a defendant about an appeal "when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are non-frivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." Id. at 480. As for prejudice, if counsel's deficient performance led to the complete denial of an appeal proceeding, a court would presume prejudice. Id. at 483. Here, "the defendant is under no obligation 'to demonstrate that his hypothetical appeal might have had merit.'" Poindexter, 492 F.3d at 269 (quoting Flores-Ortega, 528 U.S. 470 at 486).

As for Casey's claimed injury is the complete denial of her appellate proceeding, the court concludes that it should borrow from the legal standards utilized in evaluating whether an attorney's ineffectiveness led to an appeal not being filed in the first place. Specifically, the court finds that Flores-Ortega's "consultation" requirement applies to the performance inquiry here because: (1) Casey clearly indicated her desire to file an appeal; and (2) consulting with a client about whether to file an appeal or whether to withdraw an appeal are almost exact parallels—in either instance, at stake is whether the proceeding is conducted or forgone. With regard to prejudice, Casey would have to show that "there is a reasonable probability that, but for counsel's deficient failure to consult," she would have continued to pursue her appeal. See Flores-Ortega, 528 U.S. 470 at 484.

Applying the above standards, the court finds that Casey fails to establish that her counsel's performance was deficient after noting her appeal, because the record shows that her attorney sufficiently "consulted" with her under Flores-Ortega, meaning that he advised Casey

on the available "advantages and disadvantages" of continuing to pursue her appeal and sought to discover Casey's wishes.

Casey argues that if the court applies the <u>Flores-Ortega</u> standard, that she should prevail on this claim of ineffective assistance of counsel, as she "had everything to gain and nothing to lose by proceeding with her appeal despite the government's threat of pursuing remedies under the plea agreement." (Post Hr. Br. in Sup. at 6, Dkt. No. 85.) Given that the court issued a large upward variance in Casey's sentence (96 months with a guideline range of 18-24 months), she contends that there was "a relatively strong argument that her sentence was unreasonable." (<u>Id.</u> at 7.) As for her direct appeal waiver, Casey argues that the entire plea agreement was so "one-sided and oppressive" that it might not be enforced by the Fourth Circuit on appeal. (<u>See id.</u> at 12-16. <u>See also</u> § 2255 Hr. at 70, Dkt. No. 88.) [19]

The court disagrees. The record is clear that Casey's attorney discussed the disadvantages of pursuing the appeal with Casey. Counsel testified extensively to that effect (§ 2255 Hr. at 48-52, 60-65),[20] as did Casey (<u>id.</u> at 14-17, 31-35).[21] By pursuing her appeal in

---

[19] Casey makes two principle objections to her plea agreement. First, Casey argues that it was an error of law that her eligibility for acceptance of responsibility required compliance with any "reasonable request" of the government (among other conditions), and provides that the United States would have a continuing objection to her receiving such a reduction until Casey "testified truthfully at [her] sentencing hearing." (Plea Agreement, ¶ 4; Post-Hr. Br. in Sup. at 13-14) In addition, Casey argues that the plea agreement improperly allowed the government to contact Casey without the presence of her counsel. (Id., ¶ 6; Post-Hr. Br. in Sup. at 14-16.)

[20] Casey's attorney testified that he discussed his receipt of a letter from the government that Casey was in violation of her plea agreement, and that the "United States may pursue any of the remedies set out in Section 18 of the agreement, which included the reinstatement of the charges." (§ 2255 Hr. at 51.) He "saw no basis for the appeal," as "it had been waived," and he discussed this with Casey. (<u>Id.</u> at 60.) Though not recalling the specific words said to Casey, her attorney testified that he would have recommended that she withdraw her appeal, but "would have told her it's a recommendation only, and . . . would have explained to her it was her option." (<u>Id.</u> at 64.)

violation of her plea agreement, Casey was indisputably running the risk that the government could reinstitute the previously dismissed counts, which could expose her to additional jail time and/or supervision. (See Post Hr. Br. in Opp at 5-6, Dkt. No. 92; § 2255 Hr. at 51, 60-62.)[22]

The court also finds that Casey's attorney did not specifically advise her about any advantages of pursuing her appeal. Casey testified that her attorney explicitly told her that there were no benefits to continuing her appeal (§ 2255 Hr. at 14), and her attorney had no recollection of discussing any advantages (id. at 64). However, counsel's failure to advise Casey of any advantages to continuing with her appeal does not violate Flores-Ortega's consultation requirement, because the court finds that in this case there were no true advantages to Casey's appeal. Her direct appeal waiver was valid.[23] In light of the waiver, on appeal, Casey only faced the downside risk that she might incur additional jail or supervised release time due to the breach of her plea agreement. That in practice, as Casey argues, the downside risk may be minimal is not an "advantage" of pursuing the appeal. When there are only risks and no true benefits to an appeal, an attorney's consultation is adequate if the attorney advises the client only about the disadvantages (while leaving the ultimate decision to the client), even if unaccompanied by an explicit assessment of the likelihood that the disadvantages will in fact occur.

---

[21] To the extent that there are any discrepancies between Casey and her counsel's account of what transpired after an appeal was noted, the court credits Casey's attorney's version of the events.

[22] Despite the fact that Casey's sentence already reflected the relevant conduct from the dismissed counts (Plea Agreement, ¶ 3), there was still the possibility that she could face additional jail time if any future sentences were imposed consecutively.

[23] The court also finds that the Fourth Circuit would not have voided Casey's plea agreement for being oppressively one-sided, particularly when none of the now disputed provisions have been invoked. (Post Hr. Br. in Opp. at 7 n.3.)

For the above reasons, the court finds that Casey's attorney's performance was not deficient. Therefore, Casey cannot establish an ineffective assistance of counsel claim during the period after her attorney filed the appeal.[24]

### IV. Conclusion

For the stated reasons, the United States' motion for summary judgment (Dkt. No. 73) will be **GRANTED** and Casey's 28 U.S.C. § 2255 motion (Dkt. No. 67) **DENIED**. An appropriate order shall be issued this day.

The Clerk is directed to send a copy of this memorandum opinion and accompanying order to all counsel of record.

**ENTER:** This _21st_ day of August, 2009.

_James C. Turk_
Senior United States District Judge

---

[24] The court declines to reach the prejudice prong of the ineffectiveness analysis. (See supra n.11.)